IN THE SUPERIOR COURT
OF GUAM

THE PEOPLE OF GUAM, )
)
) CRIMINAL CASE No. CM 1175-11
)
v. )
) **DECISION AND ORDER**
) On Defendant's Motion for Diversion
JOSE RIOS CAMACHO, JR., )
)
Defendant. )
)

## INTRODUCTION

This matter came before the Honorable Judge Michael J. Bordallo on April 24, 2012 on Defendant's Motion for Diversion. The People of Guam were represented by Assistant Attorney General James C. Collins. The Defendant was represented by Assistant Public Defender Maria G. Fitzpatrick. Having reviewed the memorandum and papers presented, the court now issues the following decision finding that Defendants who allegedly committed their crime before March 28, 2012, are eligible to move for diversion; therefore the court grants Defendant's motion for diversion.

## FACTUAL HISTORY

This case involves the 2011 legislative amendment to Guam's Family Violence Act. Prior to March 28, 2012 Guam's Family Violence Act permitted all eligible defendants charged with an act of Family Violence to enter a pre-trial, probationary diversion program which, upon successful completion, resulted in the defendant's criminal case being dismissed and expunged. The amendment to the Act, which replaced the diversion program with a deferred plea agreement, was signed into law on September 30, 2011, but required a 180-day waiting period before the law took effect on March 28, 2012. Under the deferred plea agreement defendants are now required to provide an admission of guilt in open court before entering the probationary program that results in dismissal and expungement of their criminal case.

Defendant Camacho is alleged to have committed his crime on November 21, 2011, more than four months prior to the March 28th deadline. The question before the court is whether Camacho is eligible to enter the former diversion program or whether he is now required to enter a deferred plea agreement. The People argue that no defendant is eligible to enter the diversion after March 28, 2012 because diversion "no longer exists under Guam law." Conversely, the Defendant argues that requiring him to enter a deferred plea violates the constitutional prohibition against *ex post facto* laws. According to Camacho, the he is eligible to enter diversion because his crime was committed before the new law took effect.

## DISCUSSION

Prior to the recent amendment to Guam's Family Violence Act eligible, defendants charged with the crime of Family Violence could enter a diversion program. Diversion is a pre-trial probationary program that requires defendants to complete a recommended counseling plan, as well as possible alcohol and drug treatment, over a proscribed period of one to three years. Violating he conditions of diversion can result in termination of the defendant's diversion and the resumption of prosecution of the defendant's criminal case. Successful completion of the requirements of diversion, however, results in the defendant's criminal case being dismissed and expunged.

Under Guam's amended Family Violence Act, the diversion program has been replaced with a deferred plea agreement. 9 G.C.A. §30.80 (2011). The deferred plea agreement still permits eligible defendants to access the same counseling and substance abuse treatment program within a set probationary period and, where the defendant successfully completes the program, dismissal and expungement of all criminal charges. However, access to the program now requires eligible defendants to enter a plea of 'guilty' in open court prior to commencing the probationary period. Unlike diversion, failure to complete the requirements of probation under a deferred plea agreement does not result in renewed prosecution. Instead, the defendant's guilty plea is accepted by the court and the criminal case proceeds directly to sentencing.

Defendant has motioned the court asking that he be allowed entry into the diversion

program instead of being required to enter a deferred plea agreement. The basis of his motion is that denying him entry into the diversion program is only possible if the amendment to the Family Violence Act is applied to him retrospectively. Such an application, he further argues, violates the constitutional prohibition against *ex post facto* laws.

### 1. *Ex Post Facto* Laws

Protection from the enactment of *ex post facto* laws is guaranteed to all individuals by the U.S. Constitution, incorporated into Guam law through the Organic Act. U.S.C.A. Const. Art. I § 10, cl. 1; 48 U.S.C. §1421b(u). This constitutional protection specifically prohibits enactment of a law that creates "a punishment for an act which was not punishable at the time it was committed" or that "imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981). Specific to the case at hand, the *ex post facto* provision prohibits retroactive punishment that results from the legislative repeal or amendment of an existing statute. *See Smith v. Doe*, 538 U.S. 84, 89 (2003); 2 G.C.A. §2105.

Not all retroactive laws are, however, subject to the *ex post facto* prohibition. Instead, the Supreme Court of the United States has consistently held that laws that are solely civil and regulatory in nature are not *ex post facto*. *Beazell v. Ohio*, 269 U.S. 167, 171 (1925); *Dobbert v. Florida*, 432 U.S. 282, 293 (1977); *Smith v. Doe*, 438 U.S. 84, 92 (2003). More explicitly, legislative amendments that "relate to modes of procedure only, in which no one can be said to have a vested right," do not violate the *ex post facto* prohibition and, "the [S]tate, upon grounds of public policy, may regulate at pleasure." *Mallett v. State of North Carolina*, 181 U.S. 589, 596 (1901).

Determining whether the *ex post facto* ban applies to the recent amendment to Guam's Family Violence Act is a question of statutory construction. *See Smith* at 85. First, it must be determined whether the Legislature's amendment to the Act established civil or criminal proceedings. *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). If the Legislature's intent "was to impose punishment, that ends the inquiry." *Id.* If the Legislature's intent, however, was the enactment of "a regulatory scheme that is civil and nonpunitive," then the Court "must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's

intention to deem it civil." *Id.* The court holds that the law is both criminal and punitive in nature and the *ex post facto* prohibition applies.

## A. *The Amendment Established Criminal Proceedings*

Whether the amendment to Guam's Family Violence Act establishes criminal or civil proceedings is a question of statutory construction. *Kansas* at 361 (citing *Allen v. Illinois*, 478 U.S. 364, 368 (1986)). In interpreting the statute, the Court defers to the Legislature's intent and "only the clearest proof" of such intent can "transform what has been denominated a civil remedy into a criminal penalty." *Smith* at 92 (citing *Hudson v. U.S.*, 522 U.S. 93, 100 (1997)). If an examination of the statute's text and structure reveals "that the legislature intended to punish," this fact "would satisfy an *ex post facto* challenge without further inquiry into its effects." *Id.* at 93.

The amendment to Guam's Family Violence Act is contained within Title 9, *Crimes and Corrections*, of the criminal code. 9 G.C.A. §30.80 (2011). While this fact indicates legislative intent, a statute establishes criminal proceedings when it *punishes* specific acts and not solely because it is a criminal law. The 1963 U.S. Supreme Court case of *Kennedy v. Mendoza-Martinez* provides guidelines for determining whether a statutory scheme was intended as a civil remedy or a criminal penalty. *Hudson* at 99 (citing 372 U.S. 144). Of the seven discussed guidelines, only the following three are relevant to *ex post facto* challenges involving an alleged change or increase in the punishment prescribed for a crime: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment," and (3) "whether its operation will promote the traditional aims of punishment-retribution and deterrence" *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963).

The court finds that the Guam Legislature intended to establish criminal proceedings. The U.S. Supreme Court has long viewed probation as a punishment, stating "that a probation order is 'an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline.'" *Korematsu v. U.S.*, 319 U.S. 432, 435 (1943) (citing *Cooper v. United States* (5 Cir.), 91 F.2d 195, 199 (1937)). The probationary period required by the new deferred plea agreement is a sanction involving a restraint upon the defendant. It is not disputed that

"Offenders on probation are [ ] subject to [ ] conditions that substantially restrict their liberty." *U.S. v. Gall*, 552 U.S. 38, 48 (2007). More precisely, "Probation is simply one point [ ] on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). Finally, the deferred plea program, like the diversion program, clearly "promotes a traditional aim of punishment" in that it seeks to deter recidivism. *Kennedy* at 168-169.

### B. *Deferred Pleas are Punishment*

While probation has been generally defined as a punishment, whether a Guam law mandating the use of deferred plea agreement constitutes a punishment has not been tested in a higher court. Guam is not, however, the only jurisdiction that relies upon deferred plea agreements and the relevant statutes have been tested in multiple states. The Ninth Circuit has determined that deferred plea agreements constitute a punishment in at least two states: Hawaii and Washington.

Hawaii's deferred acceptance law is "designed as a form of punishment." *U.S. v. Bosser*, 866 F.2d 315, 317 (9th Cir. 1989). In *Bosser*, the Ninth Circuit found that Hawaii's deferred acceptance rule merely "substitute[s] one penalty for another," by allowing a defendant to "serve a probation-like sentence in lieu of having a felony put on [her] record, on the understanding that if probation is violated the guilty plea will be accepted." *Id.* When presented with a similar statute from the State of Washington, the Ninth Circuit again found that a deferred prosecution scheme constituted a punishment. *U.S. v. Sylve*, 135 F.3d 680, 685 (9th Cir. 1998). Like Hawaii, the Washington statute constituted a punishment because "petitioners must waive all essential rights, stipulate to all facts necessary to ensure their conviction, and disclaim their innocence." *Id.* at 684.

Deferred plea agreements, entered into pursuant to the amendment to Guam's Family Violence Act, constitute punishment. *U.S. v. Bosser*, 866 F.2d 315 (9th Cir. 1989); *U.S. v. Sylve*, 135 F.3d 680, 685 (9th Cir. 1998). After entering a guilty plea in open court, the defendant is placed on probation for a period of one to three years. This period of monitoring, which replaces the diversion program's pre-trial probation, is a punishment that places restraints upon the defendant's liberty. *Gall* at 48. As the deferred plea agreement offered through Guam's amended

Family Violence Act constitutes a change in the form of punishment, any retroactive application of the amendment violates the prohibition against *ex post facto* laws.

## II. The Date of Commission of the Alleged Crime is Determinative

The date of the commission of the alleged crime determines which defendants may be eligible for diversion and which defendants are required to enter a deferred plea agreement. The U.S. Supreme Court has clarified that an *ex post facto* claim requires analyzing "whether the law changes the legal consequences of *acts completed before its effective date.*" *Weaver v. Graham*, 450 U.S. 24, 31 (1981) (emphasis added) because retroactive laws "which makes more burdensome the punishment for a crime, *after its commission,*" are prohibited. *Dobbert v. Florida*, 432 U.S. 282, 292 (1977) (citing *Beazell*) (emphasis added). Thus, Supreme Court case law analyzes *ex post facto* claims relevant to "when the crime charged was committed," (*Gibson v. Mississippi*, 162 U.S. 565, 590 (1896)), and solely as it relates to "conduct completed before its enactment," (*Johnson v. U.S.*, 529 U.S. 694, 699 (2000)).

Crimes allegedly committed prior to the effective date of the amendment to Guam's Family Violence Act are not subject to the requirements of the amendment. To deny this group of defendants entrance into the diversion program would be to apply the legislative amendment retroactively – that is, prior to its effective date. Such a retroactive application denies individuals of their right to notice and violates the *ex post facto* prohibition. As explained in *Weaver*, "Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed," 450 U.S. 24, 28 (1981). The *ex post facto* prohibition guarantees that, "persons have a right to fair warning of that conduct which will give rise to criminal penalties," *Marks v. U.S.*, 430 U.S. 188, 191 (1977).

## CONCLUSION

Based on the foregoing, the court finds that the date on which a defendant's crime was committed is dispositive for the purposes of determining eligibility to enter the diversion

program. Because Defendant Camacho's crime was allegedly committed on November 21, 2011, prior to the March 28, 2012 effective date of the Family Violence Act Amendment, he is not barred from entering the diversion program. Accordingly, the court GRANTS Defendant's Motion for Diversion.

SO ORDERED, this 2 day of May 2012.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

I hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

MAY - 2 2012

James R. Borja
Deputy Clerk, Superior Court of Guam